Filed 9/14/15  Elite Aviation v. JetCard Plus CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ELITE AVIATION LLC et al., | B253742 |
| Plaintiffs, Cross-defendants and Respondents, | (Los Angeles County Super. Ct. No. LC085370) |
| v. | |
| JETCARD PLUS et al., | |
| Defendants, Cross-complainants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Maria E. Stratton, Judge.  Affirmed.

Law Offices of Mansfield Collins and Mansfield Collins for Defendants, Cross-complainants and Appellants, JetCardPlus, Inc. and Paul Svensen.

O'Rourke, Fong & Manoukian, and Marina Manoukian for Plaintiffs, Cross-defendants and Respondents, Charles Brumbaugh and John Wilkins.

_____

Elite Aviation, LLC sued JetCard Plus, Inc. and its chief executive officer, Paul Svensen, for breach of contract. (Svensen is the founder and majority shareholder of JetCard.) JetCard and Svensen filed a cross-complaint against Elite, Charles Brumbaugh, its owner during the time Elite and JetCard had a business relationship, and John Wilkins, Elite's chief operating officer during that time, for breach of contract, defamation, interference with prospective economic advantage and related torts. Following a bench trial the court found in favor of Elite on its contract claim and in favor of Elite, Brumbaugh and Wilkins on the cross-complaint. JetCard and Svensen appeal that portion of the judgment against them and in favor of Elite, Brumbaugh and Wilkins on their cross-claim for defamation. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Elite's Complaint and the JetCard/Svensen Cross-complaint*[1]

Elite was in the business of contracting on behalf of private aircraft owners who wanted to lease their aircraft for private charter transportation. On the other side of these transactions, JetCard arranged private chartered flights for its clients (members), who deposited money on account with JetCard to pay for subsequently booked flights. When a JetCard member requested a flight, JetCard contacted Elite or other entities that leased aircraft for private charter and made all the necessary arrangements for the flight. Once the flight was booked, JetCard charged its members for the flight and paid itself from the member's funds on deposit. JetCard itself was responsible for and paid the invoice for

---

[1] The clerk's transcript on appeal, which contains only the superior court's online case summary, the judgment entered on November 21, 2013, the notice of appeal and the notice designating record on appeal, is strikingly incomplete. (See *Hotels Nevada LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 348 [it is appellant's duty to provide an adequate record on appeal].) Among the missing documents are the trial court's 23-page statement of decision, as well as Elite's complaint and JetCard and Svensen's operative second amended cross-complaint. On our own motion we augment the record to include those three documents.

Our background description is based in part on our prior opinion in this case reversing an order granting Elite's special motion to strike the cross-complaint (*Elite Aviation, LLC v. JetCard Plus, Inc.* (Oct. 25, 2011, B222459) [nonpub. opn.]).

2

the member's flight. The JetCard member had no direct contractual relationship with Elite or any other charter transportation provider.

In its complaint filed in early May 2009 Elite alleged it had provided charter jet transportation for JetCard members in February and March 2009 for which JetCard owed it $221,716.24 and asserted claims for breach of contract, quantum meruit and open book account against JetCard and Svensen.[2] The complaint also pleaded causes of action for fraud and conversion, alleging JetCard had falsely represented that its members had prepaid for flights and JetCard held those members' funds in a trust account to be used only to pay for booked flights. In fact, the complaint alleged, JetCard had no intention of remitting the deposited funds to Elite and instead used that money for the personal benefit of Svensen and others.

On May 5, 2009, the day after Elite filed its complaint, Brumbaugh, on behalf of Elite, authorized Wilkins to send an email message stating, "BEWARE—JETCARD PLUS fails to pay nearly $250K and appears to be embezzling money from Customers. See Attached File." The attached file was a copy of Elite's complaint. As discussed below, the parties disputed to whom the email was sent. (See *Elite Aviation, LLC v. JetCard Plus, Inc.* (Oct. 25, 2011, B222459) [nonpub. opn.], *at p. 5.)

On July 9, 2009 JetCard filed its initial cross-complaint, which it then twice amended. The operative second amended cross-complaint, filed April 27, 2010, asserted causes of action by JetCard against Elite for breach of contract and breach of the covenant of good faith and fair dealing based on Elite's failure to invest $2 million in JetCard as it had allegedly promised to do, and by JetCard and Svensen against Elite, Brumbaugh and Wilkins for defamation, interference with contractual relations and interference with prospective economic relations caused by Wilkins's May 5, 2009 email.

---

[2] The complaint named, in addition to JetCard and Svensen, two other JetCard employees who Elite alleged owned an interest in JetCard and 16 JetCard members who had flown on Elite chartered flights for which Elite had not been paid. By the time of trial only JetCard and Svensen remained as defendants.

Prior to trial the court granted summary adjudication in favor of Elite on the second amended cross-complaint's two contract causes of action.

2. *Trial*

A five-day bench trial was held in March and April 2013. With respect to JetCard and Svensen's defamation claim, both Wilkins and Brumbaugh testified that on May 5, 2009, the day after Elite had filed its complaint, Brumbaugh, on behalf of Elite, authorized Wilkins to send the email at issue. They both also testified they did not have access to JetCard's membership list and did not, and could not, send the email to JetCard's members or customers. According to Wilkins, he sent the email only to "the industry—certificate holders in my data—in my contacts list. . . . These are the aircraft providers . . . [t]o let the certificate holders just like us know the predicament that we were in and to let them draw their own conclusion from that."

Once the email was sent, Wilkins received "read responses," "delivery responses," and "kick-back, undeliverable responses." He did not recall receiving any substantive response that addressed the content of the email itself. Wilkins and Brumbaugh explained they were expressing their personal opinion about JetCard's refusal to pay its overdue balances based on the more detailed factual allegations in the complaint attached to the email. Brumbaugh and Wilkins believed the term "embezzling" in the email meant using money in a manner that was inconsistent with the intent of the person who had deposited funds with JetCard—that is, they believed JetCard's members had placed money in trust or separate accounts for the sole purpose of paying for flights booked by that customer but JetCard, although invoicing its members for the flights they took on Elite planes, used those funds for general business purposes rather than to pay Elite.

Although he could not identify anyone who had received the email, Svensen testified the email had damaged both his and JetCard's reputation and had caused JetCard to lose hundreds of thousands of dollars of business. The trial court in its statement of decision found this testimony not credible: "The court finds Svensen's testimony to be generally highly dramatic and very unbelievable with respect to the email. Svensen's

4

demeanor as a witness belied his credibility. He refused to answer questions directly if they were put to him by opposing counsel. . . . He was, to the court, very invested in the outcome of the trial. Rather than [answering] the questions posed to him, he gave information that he wanted the court to know, whether or not it answered the pending question. . . . His testimony did not appear truthful; it appeared to be tailored to the conclusions he wanted the court to draw. As a result, the court finds his testimony not reliable or credible, particularly with respect to the email and alleged damage it caused."

JetCard also presented expert testimony from a forensic accountant who concluded there had been a dramatic drop in revenue at JetCard beginning in May 2009. (The expert analyzed the revenue stream of JetCard before and after the May 5, 2009 email, but not the company's pre- and post-email profits, which had remained the same; he had been told by Svensen there was no reason for the decline in revenue other than the email.) The court dismissed the expert's testimony, based on unverified data,[3] as "garbage in/garbage out" and found it did not meet the standard set out in *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747. "The testimony was unreliable and the court disregards it."

In May 2013 the parties filed written requests for a statement of decision. Elite presented 25 questions on controverted issues; JetCard and Svensen 81. The court filed its proposed statement of decision on November 4, 2013, finding against JetCard, but not Svensen individually, on Elite's contract and common count causes of action. Damages were determined to be $219,679.68. The court rejected Elite's fraud and conversion claims.

On the remaining tort causes of action in the cross-complaint, the court found in favor of Elite, Brumbaugh and Wilkins and against JetCard and Svensen. As to the

---

[3] In its statement of decision the court noted the expert testified he had been retained four days before his testimony and had spent only five hours preparing. He did not review JetCard's actual financial documents or verify the data he used, which were included in a summary sheet provided by Svensen. According to the court, the expert "was simply a human calculator."

defamation claim the court concluded, because JetCard and Svensen had never identified the individuals to whom the email had been sent, they failed to carry their burden to show that publication of the email defamed them. The court also ruled the email was "a classic deprecatory, predictable statement of opinion about pending litigation between the parties which a reasonable person would take as such and no more." Accordingly, it was not an ultimate statement of fact and, therefore, not actionable. Finally, the court found JetCard and Svensen had failed to prove any damages as a result of the publication of the May 5, 2009 email: JetCard and Svensen "were unable to connect the drop in revenues to the email nor were they able to rule out any of the other variables that could have caused a revenue shift."

With respect to the two remaining tort claims, the court ruled JetCard and Svensen had "presented no factual evidence that established the likelihood that Elite's email interfered with its prospective economic relations or its contractual relationship with other companies that provided charter jet transportation. Its purported damages are speculative. Not one customer was identified who refused to do business with [JetCard] based on the contents of the email. No lost prospective advantage was identified with any degree of probability. The causes of action fail."

## CONTENTION

On appeal JetCard and Svensen contend only that the court erred in ruling in favor of Elite, Brumbaugh and Wilkins on their defamation cause of action, arguing the email constituted libel per se and was not protected opinion.[4]

---

[4] Shortly after the record on appeal was filed, appellate counsel retained to represent Elite, Brumbaugh and Wilkins requested, and was granted, leave to withdraw as counsel for Elite. Elite has not retained new counsel, and no respondent's brief has been filed on its behalf. Accordingly, as to Elite we decide the appeal on the record, the opening brief and oral argument by appellants. (Cal. Rules of Court, rule 8.220(a)(2); see *In re Marriage of Davies* (1983) 143 Cal.App.3d 851, 854 [notwithstanding respondent's silence, appellant still has the affirmative burden to show error].)

6

## DISCUSSION

1. *Standard of Review*

When reviewing a judgment based upon a statement of decision following a bench trial, as here, we resolve any conflict in the evidence and draw all reasonable inferences from the facts in support of the determination of the trial court. (*Citizens Business Bank v. Gevorgian* (2013) 218 Cal.App.4th 602, 613-614; *Axis Surplus Ins. Co. v. Reinoso* (2012) 208 Cal.App.4th 181, 189.) "The substantial evidence standard applies to both express and implied findings of fact made by the superior court in its statement of decision rendered after a nonjury trial. [Citation.] The doctrine of implied findings is based on our Supreme Court's statutory construction of [Code of Civil Procedure] section 634 and provides that a 'party must state any objection to the statement in order to avoid an implied finding on appeal in favor of the prevailing party. . . . [I]f a party does not bring such deficiencies to the trial court's attention, that party waives the right to claim on appeal that the statement was deficient . . . and hence the appellate court will imply findings to support the judgment.' [Citation.] Stated otherwise, the doctrine (1) directs the appellate court to presume that the trial court made all factual findings necessary to support the judgment so long as substantial evidence supports those findings and (2) applies unless the omissions and ambiguities in the statement of decision are brought to the attention of the superior court in a timely manner." (*SFPP v. Burlington Northern & Santa Fe Ry. Co*. (2004) 121 Cal.App.4th 452, 462.)

2. *Governing Law*

a. *The elements of a cause of action for defamation*

"Defamation requires the intentional publication of a false statement of fact that has a natural tendency to injure the plaintiff's reputation or that causes special damage." (*Burrill v. Nair* (2013) 217 Cal.App.4th 357, 383.) The elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage. (*Taus v. Loftus* (2007) 40 Cal.4th 683, 720; *Wong v. Jing* (2010) 189 Cal.App.4th 1354, 1369.) Libel is defamation that is

7

written. (Civ. Code, § 45; see *Wong*, at p. 1369.) If a statement is defamatory on its face, it is libelous per se and actionable without proof of special damages. (*Burrill*, at p. 382.) "[F]alse statements charging the commission of a crime or tending directly to injure a plaintiff in respect to his or her profession by imputing dishonesty or questionable professional conduct are defamatory per se." (*Id*. at p. 383.)

b. *Actionable and nonactionable statements of opinion*

Because a defamatory statement must contain a provable falsehood, courts distinguish between statements of fact and statements of opinion for purposes of defamation liability. (*GetFugu, Inc. v. Patton Boggs LLP* (2013) 220 Cal.App.4th 141, 155; *Summit Bank v. Rogers* (2012) 206 Cal.App.4th 669, 695.) "Though mere opinions are generally not actionable [citation], a statement of opinion that implies a false assertion of fact is . . . ." (*Hawran v. Hixson* (2012) 209 Cal.App.4th 256, 289; accord, *GetFugu,* at p. 156.) Thus, the "inquiry is not merely whether the statements are fact or opinion, but '"whether a reasonable fact finder could conclude the published statement declares or implies a provably false assertion of fact."'" (*Hawran*, at p. 289; see *Summit Bank*, at p. 696 ["where an expression of opinion implies a false assertion of fact, the opinion can constitute actionable defamation"]; *Franklin v. Dynamic Details, Inc*. (2004) 116 Cal.App.4th 375, 385 ["the question is not strictly whether the published statement is fact or opinion," but "[r]ather, the dispositive question is whether a reasonable fact finder could conclude the published statement declares or implies a provably false assertion of fact"].)

The court looks at the totality of the circumstances "to determine both whether (a) a statement is fact or opinion, and (b) a statement declares or implies a provably false factual assertion; that is, courts look to the words of the statement itself and the context in which the statement was made." (*Hawran v. Hixson, supra,* 209 Cal.App.4th at p. 289.) "'This contextual analysis demands that the courts look at the nature and full content of the communication and to the knowledge and understanding of the audience to

8

whom the publication was directed.'" (*Franklin v. Dynamic Details, Inc.*, *supra*, 116 Cal.App.4th at p. 389; see *Chaker v. Mateo* (2012) 209 Cal.App.4th 1138.)

"The '"crucial question of whether challenged statements convey the requisite factual imputation is ordinarily a question of law for the court."' [Citation.] But if a statement is 'ambiguous and cannot be characterized as factual or nonfactual as a matter of law,' a jury must determine whether the statement contains an actionable assertion of fact. [Citations.] [¶] 'The allocation of functions between court and jury with respect to factual content is analogous to the allocation with respect to defamatory meaning in general. On the latter issue, the court must first determine as a question of law whether the statement is reasonably susceptible of a defamatory interpretation; if the statement satisfies this requirement, it is for the jury to determine whether a defamatory meaning was in fact conveyed to the listener or reader. [Citations.] Similarly, it is a question of law for the court whether a challenged statement is reasonably susceptible of an interpretation which implies a provably false assertion of actual fact. If that question is answered in the affirmative, the jury may be called upon to determine whether such an interpretation was in fact conveyed.'" (*Bently Reserve LP v. Papaliolios* (2013) 218 Cal.App.4th 418, 427-428.)

Even if an opinion can be understood as implying facts capable of being proved true or false, however, it is not actionable if it also discloses the underlying factual bases for the opinion and those statements are true. (*Ruiz v. Harbor View Community Assn.* (2005) 134 Cal.App.4th 1456, 1471 ["[a]n opinion is not actionable if it discloses all the statements of fact on which the opinion is based and those statements are true"]; *Nygard, Inc. v. Uusi-Kerttula* (2008) 159 Cal.App.4th 1027, 1053 [same].) "'A statement of opinion based on fully disclosed facts can be punished only if the stated facts are themselves false and demeaning.' [Citation.] The rationale for this rule is that '[w]hen the facts underlying a statement of opinion are disclosed, readers will understand they are getting the author's interpretation of the facts presented; they are therefore unlikely to construe the statement as insinuating the evidence of additional, undisclosed facts.'"

9

(*Franklin v. Dynamic Details, Inc., supra*, 116 Cal.App.4th at p. 387; see *Partington v. Bugliosi* (9th Cir. 1995) 56 F.3d 1147, 1156-1157 ["when an author outlines the facts available to him, thus making it clear that the challenged statements represent his own interpretation of those facts and leaving the reader free to draw his own conclusions, those statements are generally protected by the First Amendment"]; see generally Rest.2d Torts, § 566, com. c ["[a] simple expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is"].)

3. *The May 5, 2009 Email Was Based on Fully Disclosed, Substantially True Facts Regarding JetCard's Mishandling of Client Accounts*

On appeal JetCard and Svensen focus solely on the language in the May 5, 2009 email that JetCard "appears to be embezzling money from Customers," essentially conceding, as they must, the statement that JetCard had failed to pay Elite nearly $250,000 was substantially true. (The court found JetCard owed Elite $219,679.68, plus more than $100,000 in prejudgment interest by the time of trial.) They contend Elite, Brumbaugh and Wilkins falsely charged them with the commission of a crime (embezzlement) in the email, which was sent to aircraft providers on Wilkins's contact list, and assert (a) their failure to identify specific individuals who had received the email did not mean the email blast was not published; (b) the email constituted libel per se, which is actionable notwithstanding the absence of proof of special damages; and (c) the statement JetCard appeared to be embezzling money from its customers, even if phrased as an opinion, implied facts regarding the company's business practices that were provably false and defamatory.

We agree the email was published within the meaning of the law of defamation. Indeed, Brumbaugh and Wilkins do not contend otherwise in their respondents' brief. JetCard and Svensen are also correct, if the email were otherwise actionable, it would constitute libel per se (see *Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122, 1127 ["false accusations of crime are libel per se"]; *Barnes-Hind, Inc. v. Superior Court* (1986) 181 Cal.App.3d 377, 385 [false accusation of dishonesty or questionable business

10

practices are libel per se]); and they would have been entitled to recover at least nominal damages notwithstanding their failure to identify any particular recipient of the message,[5] to persuade the trial court JetCard's loss in revenue was attributable to the email or otherwise to demonstrate any actual injury. (See *Barnes-Hind,* at p. 382 [when plaintiff proves libel per se, damage to reputation "is conclusively presumed and he need not introduce any evidence of actual damages in order to obtain or sustain an award of damages"].)

Although we disagree with the trial court's conclusion the appears-to-be-embezzling portion of the email was simply "a classic deprecatory, predictable statement of opinion about pending litigation between the parties," we affirm the judgment in favor of Elite, Brumbaugh and Wilkins because substantial evidence supports the trial court's implied findings that readers of the email would consider its characterization of JetCard's business practices as embezzling to be Elite's opinion based on the substantially true allegations in the attached complaint regarding JetCard's mishandling of member and customer advance deposits. (See *Franklin v. Dynamic Details, Inc., supra*, 116 Cal.App.4th at pp. 378, 386 [email messages that plaintiffs had plagiarized data and stole copyrighted materials were protected opinion and thus not actionable as libel; emails expressed sender's opinion based on fully disclosed facts, which readers were free to accept or reject].)

As discussed, the May 5, 2009 email attached a copy of Elite's complaint. The allegations in the complaint, therefore, were properly considered in determining whether the assertion that JetCard appeared to be embezzling money from its customers was actionable or protected opinion. (See *Franklin v. Dynamic Details, Inc., supra*, 116 Cal.App.4th at pp. 379, 388-390 [information at linked internet sites properly

---

[5] In our prior opinion in this case reversing the special motion to dismiss the cross-complaint, we described a declaration filed by the chief executive officer of one of JetCard's competitors who stated he had received the email. JetCard does not explain why it did not introduce that individual's testimony at trial.

considered in determining whether emails adequately disclosed factual basis for opinions expressed; "[a]lthough the process of accessing the factual bases for the opinions involved clicking onto each Web site, the dispositive point is those factual bases were disclosed and were accessible to the reader"]; see also *Balzaga v. Fox News Network, LLC* (2009) 173 Cal.App.4th 1325, 1338 ["'defamatory meaning must be found, if at all, in a reading of the publication as a whole'"].)

Elite's complaint alleged in part that JetCard's clients had prepaid for flights they would book through JetCard; that the money was held by JetCard specifically for the purpose of paying for the a client's flights, including flights booked with Elite; and that JetCard instead used its customers' deposits for other purposes.[6] At trial Svensen confirmed his business model was based on JetCard's clients prepaying for flights to be booked. Once the JetCard client took a flight booked through the company, JetCard charged (invoiced) the client and paid itself from the funds on deposit; JetCard itself was responsible for payment to the entity that had provided the charter jet service for the JetCard client. Elite proved that on numerous occasions JetCard had invoiced its clients but then used those deposits for general corporate purposes, rather than to pay for flights arranged by Elite. Elite also presented the testimony of a former JetCard member who explained, when he deposited money with JetCard (several hundred thousand dollars), Svensen had represented his money would be used only to pay for flights booked by and for him. Even if Elite failed to prove it had been defrauded, therefore, the evidence at trial established the substantial truth of the complaint's allegations that JetCard was misusing its' clients funds by failing to apply them only to charges for flights booked by those clients.

---

[6] The complaint also alleged, as an element of its fraud cause of action, that JetCard, through an authorized representative (not Svensen himself), had misrepresented to Elite that the client deposits had been placed into trust accounts. At trial Svensen denied Brumbaugh or Wilkins had been told the clients' funds were placed in trust or segregated accounts—an assertion the trial court accepted.

Embezzlement is defined in California as "the fraudulent appropriation of property by a person to whom it has been intrusted." (Pen. Code, § 503.) "The mental state required for embezzlement 'may be found to exist whenever a person, for any length of time, uses property entrusted to him or her in a way that significantly interferes with the owner's enjoyment or use of the property.'" (*Ferrick v. Santa Clara University* (2014) 231 Cal.App.4th 1337, 1347.)

JetCard's use of funds for general business purposes that its clients had deposited for the express, limited purpose of paying for chartered jet transportation booked on their behalf may not constitute the crime of embezzlement. But the evidence was sufficient to permit the trial court to conclude readers of the email would understand its substance or gist to be that JetCard was misleading its clients and improperly handling their advance deposits, resulting in an unpaid obligation of nearly $250,000 to Elite, and that those factual statements were substantially true: "As in 'other jurisdictions, California law permits the defense of substantial truth and would absolve a defendant even if she cannot "justify every word of the alleged defamatory matter; it is sufficient if the substance of the charge be proved true, irrespective of slight inaccuracy in the details."' [Citation.] 'Minor inaccuracies do not amount to falsity so long as "the substance, the gist, the sting, of the libelous charge be justified."'" (*GetFugu, Inc. v. Patton Boggs LLP, supra*, 220 Cal.App.4th at p. 154; see *Carver v. Bonds* (2005) 135 Cal.App.4th 328, 344-345 [a statement is not considered false unless it would have a different effect on the mind of the reader from that which the truth would have produced]; *Sipple v. Foundation for Nat. Progress* (1999) 71 Cal.App.4th 226, 244.)

In sum, substantial evidence supports implied findings that Elite's derogatory gloss on JetCard's business practices—that it "appears to be embezzling money from Customers"—conveyed a protected opinion based on facts disclosed in the email attachment. (See *SFPP v. Burlington Northern & Santa Fe Ry. Co., supra*, 121 Cal.App.4th at p. 462.) As such, the trial court properly found the email was not actionable: "'Accusations of criminal activity, like other statements, are not actionable if

13

the underlying facts are disclosed.'" (*Franklin v. Dynamic Details, Inc., supra*, 116 Cal.App.4th at p. 388.)

## DISPOSITION

The judgment is affirmed. Brumbaugh and Wilkins are to recover their costs on appeal.

PERLUSS, P. J.

We concur:

SEGAL, J.

BECKLOFF, J.[*]

---

[*]     Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.