Filed 4/27/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| YASSER ABUEMEIRA et al., <br><br>   Plaintiffs and Respondents, <br><br> v. <br><br> JOHN F. STEPHENS et al., <br><br>   Defendants and Appellants. | 2d Civil No. B264542 <br> (Super. Ct. No. 56-2012-00421674- <br> CU-MC-VTA) <br> (Ventura County) |

      The parties in this case are neighbors. Appellants ignored Rodney King's famous entreaty. Instead of getting along, they initiated events resulting in a brawl with respondents. Appellants videotaped and distributed the video-recording to news agencies and various members of the public. Respondents sued, alleging numerous causes of action stemming from the altercation. Appellants responded with a motion to strike, challenging two causes of action as a strategic lawsuit against public participation ("SLAPP"). (Code Civ. Proc., § 425.16.)[1]

      A video-recording of an unseemly private brawl, no matter how wide its distribution, is far removed from a citizen's constitutional right of petition or free speech involving a public issue.

      John F. Stephens and Razmik B. Ekmekdjian appeal an order denying a motion to strike two causes of action in a second amended complaint for damages filed

---

[1] All further statutory references are to the Code of Civil Procedure unless stated otherwise.

by Yasser and Daria Abuemeira.  The trial court properly denied the motion to strike.  We affirm.

## FACTUAL AND PROCEDURAL HISTORY[2]

Stephens, Ekmekdjian, and Yasser and Daria Abuemeira are neighbors in a gated community in Bell Canyon.[3]  On July 15, 2012, Stephens, Ekmekdjian, and Yasser engaged in a physical altercation on the roadside of Bell Canyon Road, within the community.  Yasser had been driving a motorcycle and Stephens and Ekmekdjian had been driving a passenger sedan.  Daria, Yasser's wife, and their two young children were in a nearby park; Daria observed some of the events.  Stephens used his cellular telephone to record part of the incident, including profanities and derisive words uttered by the participants.  Eventually, a passerby stopped and separated the combatants.  Sheriff's deputies soon arrived and arrested Yasser and Ekmekdjian.  Yasser claimed physical injuries and received treatment at a local hospital.  Upon this much, the parties agree.

### Criminal Prosecution of Yasser Abuemeira

The district attorney filed charges against Yasser, but later filed a motion to dismiss the charges.  By written motion, the prosecutor explained that it is unclear who the initial aggressor was in the incident; the video-recording reflects that Stephens and Ekmekdjian appear "hostile and agitated," thereby suggesting provocation; no independent witness corroborates the version of events described by Stephens and Ekmekdjian; and, circumstantial evidence supports Yasser's account of the incident.  The prosecutor stated that Stephens appeared agitated and angry from the inception, pointed his finger at Yasser and stated that Yasser should "go fuck [himself]."  The prosecutor added that Yasser "rushed" Stephens after Stephens refused to cease video-recording Yasser's children.  Finally, the prosecutor described a conversation between Stephens and

---

[2] Unfortunately, this opinion contains an abundance of obscene language.  Reader discretion advised; unsuitable for precocious children of reading age.

[3] As the context demands, we shall refer to Yasser and Daria Abuemeira by their first names not from disrespect but to ease the reader's task.

Ekmekdjian overheard in the courthouse hallway discussing "run[ning]" Yasser "off the road." The trial court granted the prosecutor's motion to dismiss in the interests of justice. (Pen. Code, § 1385, subd. (a).)

The Abuemeiras filed a second amended complaint for damages, alleging eight causes of action regarding Yasser's "detention" by Stephens and Ekmekdjian, the ensuing verbal argument, the physical altercation, and later acts of defamation. The Abuemeiras allege that Stephens and Ekmekdjian edited the video-recording of the incident and then published it to third parties, including attendees at homeowner association meetings and to a television news reporter. In those forums, Stephens and Ekmekdjian described the incident as a "hate crime" against homosexuals.

Stephens and Ekmekdjian filed a special motion to strike the second and fourth causes of action of the second amended complaint, pursuant to the anti-SLAPP law. (§ 425.16.) These two causes of action were based on allegations of intentional infliction of emotional distress and defamation. In the motion, Stephens and Ekmekdjian characterized the roadside skirmish as "a hate crime against a homosexual couple." Following the filing of the Abuemeiras' complaint, Stephens and Ekmekdjian displayed the video-recording to family, friends, law enforcement, and news agencies, and created an on-line petition demanding that the California Attorney General investigate the incident. Stephens and Ekmekdjian asserted that the two causes of action were also precluded by the litigation privilege of Civil Code section 47, subdivision (b).

Stephens and Ekmekdjian submitted declarations in support of their anti-SLAPP motion. They stated that on July 15, 2012, they saw Yasser speeding on his motorcycle and followed him to obtain his license-plate number. Yasser stopped the motorcycle and gestured for them to approach. Yasser then "lunged" at Ekmekdjian who "shoved" Yasser in response. "[I]n rage," Yasser called the two men "faggots" and "cocksuckers." Yasser then "jumped" Stephens, struck him, and demanded that he cease recording the incident. When Ekmekdjian intervened, Yasser struck him too. Eventually, a passerby separated the combatants. Although sheriff's deputies arrested Yasser and Ekmekdjian, prosecution ensued only against Yasser.

3

Not surprisingly, Yasser described the encounter differently. He stated that he gestured for Stephens and Ekmekdjian to drive past him, but instead, they forced him off the roadway and blocked his passage. When Stephens left his vehicle, he began filming the encounter with his cellular telephone. He "forced [the] phone into [Yasser's] face," and stated, "Say hello to the world." Stephens and Ekmekdjian yelled and made accusations and then Ekmekdjian shoved Yasser. Stephens later filmed Daria and the two children, despite Yasser's pleas not to do so. Stephens stated: "I can do whatever the fuck I want. I'm a super lawyer -- do something about it." A physical altercation then ensued. During the fight, Stephens and Ekmekdjian referred to Daria as a "bitch," and a "cunt," and to Yasser as a "nigger" and an "animal." They also suggested or implied that Yasser was "a terrorist." Yasser was thrown to the ground and punched and kicked in the head. Daria and her infant received some bruises and scratches when they attempted to rescue Yasser.

In response to the anti-SLAPP motion, Yasser stated that Stephens and Ekmekdjian were "self-appointed traffic bullies who seemed to be looking to pick a fight." Yasser declared that he had never met Stephens or Ekmekdjian before the incident and was unaware of their sexual orientations.

Yasser also declared that the video-recording of the incident is incomplete, the participants' statements are "muffled," and the recording appears to have been edited. Yasser presented a written expert opinion that the recording reflects a GPS coordinate of an address in West Hills, suggesting that the recording had been edited at that address, after filming.[4]

The trial court denied the anti-SLAPP motion. In a written ruling, the trial judge stated: "The statements in question do not come within the litigation privilege. This case involves a dispute between private persons. The efforts of the defendants to publicize it do not transform it into an issue of public interest."

---

[4] The Abuemeiras have provided a copy of the video-recording in their respondents' appendix. We have viewed it.

Stephens and Ekmekdjian appeal and contend that the trial court erred by denying the anti-SLAPP motion because their communications regarding a hate crime are matters of public interest that also fall within the litigation privilege.

*DISCUSSION*[5]

*I.*

Stephens argues that the Abuemeiras' second and fourth causes of action rest upon protected activity pursuant to section 425.16, subdivisions (e)(3) ["any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest"] and (e)(4) ["any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest"].)  He asserts that his communications to friends, family members, and the general public are acts involving the constitutional right of free speech regarding an issue of public interest.

Section 425.16, subdivision (b)(1) provides that a cause of action "arising from" a defendant's act in furtherance of a constitutionally protected right of free speech shall be struck unless the plaintiff establishes a probability that he will prevail on his claim.  (*Fahlen v. Sutter Central Valley Hospitals* (2014) 58 Cal.4th 655, 665, fn. 3.)  Section 425.16 "provides a procedure for the early dismissal of what are commonly known as SLAPP suits . . . litigation of a harassing nature, brought to challenge the exercise of protected free speech rights."  (*Fahlen*, at p. 665, fn. 3.)  A SLAPP suit is generally brought to obtain an economic advantage over the defendant, not to vindicate a legally cognizable right of the plaintiff.  (*Graffiti Protective Coatings, Inc. v. City of Pico Rivera* (2010) 181 Cal.App.4th 1207, 1215 [SLAPP plaintiff does not expect to succeed in his lawsuit, only to tie up defendant's resources to allow plaintiff sufficient time to accomplish his underlying objective].)  "The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives

_____

[5] Hereafter, we shall refer to Stephens and Ekmekdjian collectively as "Stephens" except where clarity demands that we draw a distinction.

rise to his or her asserted liability--and whether that activity constitutes protected speech or petitioning." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 92.)

The analysis of an anti-SLAPP motion pursuant to section 425.16 is two-fold. (*Talega Maintenance Corp. v. Standard Pacific Corp.* (2014) 225 Cal.App.4th 722, 727; *Cole v. Patricia A. Meyer & Associates, APC* (2012) 206 Cal.App.4th 1095, 1104.) The trial court first decides whether defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. If the court finds that a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on his claim. (*Ibid.*) Our inquiry regarding the first prong of the analysis concerns the principal thrust or gravamen of the cause of action--the allegedly wrongful and injury-producing conduct that provides the foundation for the claims. (*Talega Maintenance Corp.*, at p. 728.)

We independently review the trial court's determination of each step of the analysis. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325-326; *Kenne v. Stennis* (2014) 230 Cal.App.4th 953, 963.) "'[W]e engage in the same, two-step process as the trial court to determine if the parties have satisfied their respective burdens. [Citations.] If the defendant fails to show that the lawsuit arises from protected activity, we affirm the trial court's ruling and need not address the merits of the case under the second prong of the statute.'" (*Talega Maintenance Corp. v. Standard Pacific Corp.*, *supra*, 225 Cal.App.4th 722, 728.)

The trial court properly denied the anti-SLAPP motion because Stephens's conduct did not involve an act in furtherance of his constitutional right of petition or free speech in connection with a public issue. (§ 425.16, subd. (b)(1); *Lefebvre v. Lefebvre* (2011) 199 Cal.App.4th 696, 703 [making of false police report is not an act in furtherance of the constitutional right of petition or free speech].) Causes of action arising from false allegations of criminal conduct are not subject to the anti-SLAPP laws. (*Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122, 1127.)

Moreover, Stephens did not present any evidence to establish that the Abuemeiras were anyone other than "private, anonymous" parties or that the dispute was

6

anything other than a private controversy. (*Weinberg v. Feisel*, *supra*, 110 Cal.App.4th 1122, 1132.) Section 425.16, subdivisions (e)(3) and (e)(4) require that the complained of communications concern "an issue of public interest." "A person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people." (*Weinberg*, at p. 1133.) In addition, the focus of the speaker's conduct should be the public interest rather than an effort "'to gather ammunition for another round of [private] controversy.'" (*Id.* at pp. 1132-1133.) Under the circumstances here, Stephens did not establish the threshold showing required to support a special motion to strike.

## II.

Pointing out that the defamation allegations rest upon communications made after the Abuemeiras filed their initial complaint, Stephens asserts that the communications are protected by the litigation privilege of Civil Code section 47, subdivision (b) and judicial interpretations thereof. Stephens relies upon *Kenne v. Stennis*, *supra*, 230 Cal.App.4th 953, 965 [litigation privilege applies to communications that have "some relation" to a lawsuit, i.e., making of allegedly false police reports and filing of harassment petitions] and *Healy v. Tuscany Hills Landscape & Recreation Corp.* (2006) 137 Cal.App.4th 1, 5-6 [litigation privilege applies to attorney's letter sent to members of homeowners' association in lawsuit involving the association].

The litigation privilege of Civil Code section 47 pertains to any communication 1) made in judicial or quasi-judicial proceedings; 2) by litigants or other participants authorized by law; 3) to achieve the objects of the litigation; and 4) that have some connection or logical relation to the action. (*GetFugu, Inc. v. Patton Boggs LLP* (2013) 220 Cal.App.4th 141, 152.) The principal purpose of the litigation privilege is to afford litigants and witnesses the utmost freedom of access to the courts without fear of litigation reprisal. (*Ibid.*) Republications to nonparticipants in the action are not privileged and are actionable unless privileged on some other basis. (*Ibid.* [litigation privilege does not apply where publication is to persons in no way connected with the proceeding].) Thus, the litigation privilege does not apply to publications to the general

7

public through the press.  (*Id.* at p. 153.)  "Litigating in the press" does not serve the purpose of the privilege; it serves no purpose other than to provide immunity to those who would inflict damage upon the judiciary.  (*Ibid.*; *Rothman v. Jackson* (1996) 49 Cal.App.4th 1134, 1146 [public mudslinging not entitled to protection afforded by litigation privilege].)

The litigation privilege does not protect Stephens because he has not established that the speech recipients are connected with the litigation or that his communications achieve any objective of the litigation.  "A party's legitimate objectives *in* the litigation are limited to the remedies which can be awarded by courts. . . .  [A] defendant's 'objects' are to resist a determination of liability and whatever assessment of damages, penalty or other order that the plaintiff seeks."  (*Rothman v. Jackson*, *supra*, 49 Cal.App.4th 1134, 1147-1148.)  Moreover, Stephens's communications to the general public through the Internet and the media are not protected by the litigation privilege.  (*GetFugu, Inc. v. Patton Boggs LLP*, *supra*, 220 Cal.App.4th 141, 152.)  An expansion of the rule to allow publication to the general public through the press would be contrary to our Supreme Court's holding that the litigation privilege does not protect republications to nonparticipants in the action.  (*Id.* at p. 153.)

The order is affirmed.  The Abuemeiras shall recover costs on appeal.

CERTIFIED FOR PUBLICATION.


GILBERT, P. J.

We concur:



YEGAN, J.



PERREN, J.

8

Henry Walsh, Judge

Superior Court County of Ventura

_____

Law Offices of Randy Godin, Randy Godin for Defendants and Appellants.

Gerard Fox Law P.C., Gerard P. Fox, Marina V. Bogorad, Jeffrey Z. Liu for Plaintiffs and Respondents.