Filed 9/16/21  Young v. The Leland Stanford Junior Univ. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| QIQIUIA YOUNG,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>THE LELAND STANFORD JUNIOR UNIVERSITY et al.,<br><br>  Defendants and Appellants. | A161237<br><br>(Alameda County<br>Super. Ct. No. RG17877051) |

Defendant Stanford Health Care (Stanford Health) appeals from an order denying its motion to strike plaintiff Qiqiuia Young's defamation claim under Code of Civil Procedure section 425.16 (anti-SLAPP[1] motion or motion to strike).[2]  Young alleged Stanford Health's Chief Executive Officer (CEO) published a defamatory letter implying she lied about facts in her lawsuit against Stanford Health.  Stanford Health contends this letter is not actionable because it simply expressed a predictable opinion about the merits of Young's lawsuit.  It argues the trial court thus erroneously rejected its

---

[1] " 'SLAPP' is an acronym for 'strategic lawsuit against public participation.' " (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 381, fn. 1 (*Baral*).)

[2] All further references are to the Code of Civil Procedure unless otherwise noted.

motion to strike because Young failed to demonstrate a probability of prevailing on her defamation claim. We disagree and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     Young's Lawsuit

Young is an African American employee of Stanford Health. In September 2017, she filed a lawsuit against Stanford Health, alleging employees failed to perform required emergency equipment checks and falsified safety records. She also claimed Stanford Health created a hostile and abusive work environment where she was subjected to racial harassment, discrimination, and retaliation for whistleblowing. In one instance, she claimed a coworker dressed like a Ku Klux Klan member for Halloween. A photograph of her costumed coworker circulated widely throughout the office. After she reported the incident, Young claims her supervisors retaliated against her by denying her, among other things, promotional opportunities and pay commensurate with her experience. Other alleged incidents included a co-worker calling Young the N-word—an incident Young reported to her supervisor who then failed to properly investigate. The lawsuit immediately garnered attention from the press.

### II.    Stanford Health's Letter

The day after Young filed her complaint, Stanford Health's CEO emailed a letter to all Stanford Health employees addressing the lawsuit. It began, "I am writing in relation to media coverage you may have seen this week regarding a Stanford Health Care employee. I want to ensure that you have the facts about this unfortunate situation. A lawsuit has been filed by a current employee with allegations of racism and patient safety issues that are grossly exaggerated and largely inaccurate. SHC is fully committed to a diverse, respectful, and inclusive workplace, and not only encourages, but

2

requires, all employees to raise concerns that they believe may affect the patient experience or the workplace."

The letter continued, disputing Young's allegations of racism and patient endangerment: "Contrary to what you may see in the media, SHC has been extremely proactive in addressing the employee's concerns. [¶] . . . Although the employee filing the suit was shown a photo of another employee covered in a sheet in 2014, all of the employees involved in that incident were terminated by SHC, including those who merely saw the photo and did not report it to management. [¶] . . . I, and the Dean of the School of Medicine at Stanford, have personally met with Cancer Center leaders and faculty to deliver the broader message that, while SHC did the right thing to terminate all those involved in the 2014 incident, such behavior . . . will never be tolerated at SHC. I have conveyed, and will continue to convey, that SHC has zero tolerance for conduct that promotes disrespect of another's race, culture, gender or lifestyle, and anyone who learns of any behavior which is offensive, demeaning or hurtful, needs to act on it immediately using the many resources SHC has, including HR and leadership. [¶] . . . Finally . . . an independent agency that certifies and accredits health care organizations, has investigated those issues raised by the employee and found that either there was no issue, or that SHC has resolved the issue. No action has ever been taken against SHC for the purported safety issues raised by the employee. SHC is fully dedicated to patient safety and takes aggressive proactive efforts to ensure safe and quality care."

The letter concluded by noting "[a]t every turn, SHC has responded proactively and lawfully when this employee raised concerns about her workplace and SHC will vigorously defend this lawsuit . . . [¶] . . . [¶] I regret that it is necessary to communicate broadly about any individual SHC

3

employee; however, the media coverage in relation to this lawsuit requires that our community receive this information." The Dean of the School of Medicine subsequently forwarded this letter to all School of Medicine faculty, staff, students, and postdoctoral researchers as well as some affiliates. As a result, over 22,000 people received the letter.

### III.  Defamation Claim and Anti-SLAPP Motion

Young amended her complaint to add a defamation claim based on the letter. She alleged the letter implied that she was dishonest and that her reports and complaints about racial discrimination and patient safety were false. Stanford Health filed an anti-SLAPP motion, which the trial court denied.

### DISCUSSION

### I.  Anti-SLAPP Law and Standard of Review

The anti-SLAPP statute authorizes early dismissal of unmeritorious claims that interfere with a person's constitutional right of petition or free speech. (§ 425.16, subd. (a); *Simmons v. Bauer Media Group USA, LLC* (2020) 50 Cal.App.5th 1037, 1043.) There are two prongs for resolving an anti-SLAPP motion. (*Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007) 151 Cal.App.4th 688, 699 (*Overstock.com*).) The defendant must first establish the challenged claim arises out of "acts in furtherance of the defendant's constitutional right of petition or free speech in connection with a public issue." (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 186.)

After making this showing, the burden shifts to the plaintiff who must "establish a probability of prevailing on the merits" of the claim. (*Overstock.com, supra*, 151 Cal.App.4th at p. 699.) Under the second prong, the court accepts the plaintiff's evidence as true and merely inquires whether

the plaintiff stated a legally sufficient claim and made a prima facie showing sufficient for a favorable judgment. (*Baral*, *supra*, 1 Cal.5th at pp. 384–385.) To do so, the plaintiff need only show " 'minimal merit.' " (*Id.* at p. 385.) We review the trial court's ruling on the anti-SLAPP motion de novo. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067.)

## II.     Liability Arising from Protected Activity

Stanford Health demonstrated that Young's defamation claim, based entirely on its CEO's letter, satisfied the first prong because it is a "written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body," such as a lawsuit. (§ 425.16, subd. (e)(2); *Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1266 (*Neville*).) "[A] statement is 'in connection with' litigation under section 425.16, subdivision (e)(2) if it relates to the substantive issues in the litigation and is directed to persons having some interest in the litigation." (*Neville*, at p. 1266.)

Here, Stanford Health's letter, by referring to Young's litigation and disputing her allegations, was issued in connection with a judicial proceeding. (See *Healy v. Tuscany Hills Landscape & Recreation Corp.* (2006) 137 Cal.App.4th 1, 5–6 [letter informing association members of pending litigation involving association was made "unquestionably 'in connection with' judicial proceedings"].) The letter was also directed at persons with an interest in that litigation. The letter was sent to Stanford Health employees and those who work directly with them. All of those persons reasonably had an interest in Stanford Health's position on pervasive race discrimination and harassment and neglect of patient safety alleged to be occurring at their workplace. (See *Neville*, *supra*, 160 Cal.App.4th at p. 1268.) This is more

5

than a generalized curiosity about the litigation, contrary to Young's suggestion.

A person's "interest in the litigation" is not established solely by *involvement* in the litigation, contrary to Young's assertions. While participation in a lawsuit may certainly satisfy that criterion (see, e.g., *Contemporary Services Corp. v. Staff Pro Inc.* (2007) 152 Cal.App.4th 1043, 1055 [email sent to customers involved in discovery for the litigation was a protected activity under section 425.16, subd. (e)(2)]), there is no such requirement in the statute (*Neville*, *supra*, 160 Cal.App.4th at p. 1270 [subdivision (e)(2) "has been held to protect statements to persons who are not parties or potential parties to litigation, provided such statements are made 'in connection with' pending or anticipated litigation"]).

We further reject Young's claim that the letter is not privileged under Civil Code section 47 and thus not a protected activity. Although courts have examined "the scope of the litigation privilege to determine whether a given communication falls within the ambit of [Code of Civil Procedure section 425.16,] subdivisions (e)(1) and (2)," Civil Code section 47 does not operate as a limitation on the scope of the anti-SLAPP statute. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 322–323, 325; *City of Costa Mesa v. D'Alessio Investments, LLC* (2013) 214 Cal.App.4th 358, 366–367, 373 [finding statements were made in connection with litigation without assessing whether the communication was privileged].) The litigation privilege, as Young admits, is simply an "aid," not a requirement for determining whether the letter is protected under Code of Civil Procedure section 425.16, subdivision (e)(2). (*Neville*, *supra*, 160 Cal.App.4th at p. 1263 [whether a statement is privileged does not resolve whether a statement is protected under Code of Civil

6

Procedure section 425.16, subd. (e)(2), the "two statutes are not coextensive"].)

In sum, Stanford Health has satisfied this first anti-SLAPP prong.

## II.    Probability of Prevailing on the Merits

Stanford Health maintains there is no probability that Young will prevail on the merits of her defamation claim, the second prong of the anti-SLAPP inquiry.  According to Stanford Health, the letter contained a deprecatory statement about the merits of Young's lawsuit that was "nothing more than 'the predictable opinion' of one side to the lawsuit" and is therefore not actionable.  (*GetFugu, Inc. v. Patton Boggs LLP* (2013) 220 Cal.App.4th 141, 156 (*GetFugu*).)  We disagree.

### A. Defamation Law

Defamation is an injury to reputation that may be caused by libel—a "false and unprivileged publication by writing, printing . . . which exposes any person to hatred . . . shunned or avoided, or which has a tendency to injure him in his occupation."  (Civ. Code, §§ 44, 45.)  Prevailing on a claim for defamation requires demonstrating the defendant published a statement, the statement was about the plaintiff, the statement was false, and the defendant failed to use reasonable care to determine whether the statement was true or false.  (*Hecimovich v. Encinal School Parent Teacher Organization* (2012) 203 Cal.App.4th 450, 470.)

The parties primarily disagree over whether the letter made a statement of fact.  "Because the statement must contain a provable falsehood, courts distinguish between statements of fact and statements of opinion for purposes of defamation liability."  (*ZL Technologies, Inc. v. Does 1–7* (2017) 13 Cal.App.5th 603, 624 (*ZL Technologies*).)  Statements of fact are actionable.  (*GetFugu, supra,* 220 Cal.App.4th at pp. 155–156.)  Expressions of opinion

are constitutionally protected, but do not enjoy "blanket protection." (*Id*. p. 156.) "[W]here an expression of opinion implies a false assertion of fact, the opinion can constitute actionable defamation." (*Ibid*.) Thus, the critical question is " ' "whether a reasonable fact finder could conclude the published statement declares or implies a provably false assertion of fact," ' " a question of law. (*Ibid*.; *Summit Bank v. Rogers* (2012) 206 Cal.App.4th 669, 696.)

In making that determination, we examine the totality of the circumstances, considering the statement's language and the context in which the statement was made. (*Franklin v. Dynamic Details, Inc.* (2004) 116 Cal.App.4th 375, 385 (*Franklin*).) When considering the statement in context, we " 'examine the nature and full content of the particular communication, as well as the knowledge and understanding of the audience targeted by the publication.' " (*Bently Reserve LP v. Papaliolios* (2013) 218 Cal.App.4th 418, 427 (*Bently*).) Looking at the circumstances here, a reasonable factfinder could conclude the letter contained statements that declared or implied provably false assertions of fact. Thus, Young has established a probability of prevailing. (*Ferlauto v. Hamsher* (1999) 74 Cal.App.4th 1394, 1401 (*Ferlauto*) [" 'If the court concludes the statement could reasonably be construed as either fact or opinion, the issue should be resolved by a jury' "].)

A.   **Statement "Of or Concerning" the Plaintiff**

As a preliminary matter, we reject Stanford Health's claim the letter is not defamatory because it addresses Young's lawsuit, not Young personally. (See *Dickinson v. Cosby* (2019) 37 Cal.App.5th 1138, 1160 (*Dickinson II*) ["defamatory statement is actionable only if it is 'of and concerning' the plaintiff"].) The letter referred to Young by reasonable implication. (*Ibid*.

[standard for demonstrating whether statement concerns plaintiff].) The day after Young filed her lawsuit, Stanford Health sent its letter, expressly referring to a Stanford Health employee who filed a lawsuit alleging racism and patient safety issues. It then expressed regret for "communicat[ing] broadly about any individual [Stanford Health] employee." Young further presented evidence that another employee immediately recognized the letter was about Young. (Cf. *id*. at p. 1163 [circumstantial evidence may be used to "show at least one third party heard the allegedly defamatory statements and actually understood them to refer to" plaintiff].) The letter is a statement "of or concerning" Young.

## B. Language

The language of the letter supports "the conclusion that a reasonable fact finder could conclude the . . . letter states or implies a provably false assertion of fact." (*Dickinson v. Cosby* (2017) 17 Cal.App.5th 655, 687 (*Dickinson I*).)

First, while not dispositive, the letter lacks any cautious phrasing suggesting that the "statement is less likely to be reasonably understood as a statement of fact rather than opinion." (*Baker v. Los Angeles Herald Examiner* (1986) 42 Cal.3d 254, 260–261 [the words "impression" "belief" "view" or "opinion" may place reader on notice the author does not vouch for a statement's accuracy].)

Second, although the letter arguably employs some hyperbolic language indicative of an opinion by describing Young's allegations as "grossly exaggerated and largely inaccurate," it also supported that language with facts. (See *Franklin*, *supra*, 116 Cal.App.4th at p. 385 [generalized hyperbolic comments may " 'negate the impression that the author seriously is maintaining an assertion of actual fact' "]; *Ferlauto*, *supra*, 74 Cal.App.4th at

9

p. 1403 [characterization of lawsuit as "a joke" and "frivolous" are descriptive terms that do not "improperly attack appellant's competence or ethics and cannot be the basis for a defamation claim"].) This includes facts based on the CEO's personal knowledge, which are indicative of a statement of fact, not opinion. (See *Bently*, *supra*, 218 Cal.App.4th at p. 429.)

Before classifying Young's allegations as "grossly exaggerated and largely inaccurate," the CEO announced, "I want to ensure that you have the *facts* about this unfortunate situation," indicating that the letter was both factual and comprehensive. (Italics added.) The CEO then disputed Young's allegations by conveying his firsthand knowledge and experience in addressing patient safety and racial discrimination issues. This included noting that an independent organization absolved Stanford Health of any patient safety issues. The CEO also personally condoned a decision to terminate employees who were disrespectful about race, including the incident in which an employee allegedly wore a Ku Klux Klan costume. (See *ZL Technologies, supra*, 13 Cal.App.5th at p. 624 [factually specific statement by speaker with specialized or firsthand knowledge may be actionable].) The CEO concluded by emphasizing that media coverage about the lawsuit "requires our community receive *this information*." (Italics added.) By providing facts that Stanford Health admits were incomplete to support the statement that Young's allegations were grossly exaggerated and largely inaccurate, that statement could reasonably be considered a provably false statement of fact. (See *Bently*, *supra*, 218 Cal.App.4th at p. 428; see also *Milkovich v. Lorain Journal Co.* (1990) 497 U.S. 1, 18–19 ["Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of facts"].)

For that reason, we disagree that characterizing Young's allegations as "grossly exaggerated and largely inaccurate" simply expressed a "predictable opinion" that was nonactionable under *GetFugu*, *supra*, 220 Cal.App.4th at p. 156. In *GetFugu*, the allegedly defamatory "Tweet" stated: "GetFugu runs an organization for the benefit of its officers and directors, not shareholders and employees. The RICO suit was not frivolous. The 500K lawsuit is frivolous, however, so buyer be wary." (*Id.* at p. 146.) The court concluded the Tweet was not actionable because it was a deprecatory statement about the merits of litigation. (*Id.* at p. 156.)

But that Tweet was confined to generalized statements about the lawsuit; it did not present any facts. (See *GetFugu*, *supra*, 220 Cal.App.4th at p. 156 [noting a statement expressing a subjective reaction without "provable facts" may not lead a reasonable reader to understand the words were actual statements of fact].) The letter here, in contrast, contains more—a statement that Young's allegations are "grossly exaggerated and largely inaccurate" followed by explicit factual statements rebutting some, but not all of, Young's allegations. Because the letter included these admittedly incomplete factual statements, a reasonable reader could conclude the letter implies an assertion of fact about Young's credibility—i.e., that she lied about racial harassment, discrimination, and patient endangerment and that Stanford Health appropriately dealt with any issues—that if false, could support a defamation claim. (See *ibid.*)

## C.   Context

The context also supports the conclusion that the letter states or implies a provably false assertion of fact. The letter comes from the CEO of Stanford Health, its highest ranking officer, on his official letterhead. It was sent to all employees of Stanford Health at their work email address one day

11

after Young filed her lawsuit and garnered media coverage.  Under these circumstances, the audience could reasonably conclude that the CEO had insider knowledge of the falsity of Young's allegations and that the letter refuted those allegations based on that knowledge.  This is sufficient to satisfy Young's burden at this stage of the proceeding.  (See *Dickinson I*, *supra*, 17 Cal.App.5th at p. 689 [context supported finding that letter implied a false statement of fact because letter came from attorney and responded to media inquiries about rape allegations against his client].)

The litigation context in which the letter was published does not alter this conclusion.  Stanford Health argues the letter was published in response to a lawsuit—an adversarial context which indicates that the letter is non-actionable opinion.  Relying on *Information Control Corp. v. Genesis One Computer Corp.* (9th Cir. 1980) 611 F.2d 781, Stanford Health maintains it sent the letter to employees who would be expected to be aware of Young's lawsuit and understand the phrase "grossly exaggerated and largely inaccurate" to be predictable opinion from a defendant to that lawsuit.  (See *id*. at p. 784 [disparagement of an opponent's lawsuit highly unlikely to be understood as presenting any facts].)

True, language presented in an adversarial setting that might "be considered as statements of fact may well assume the character of statements of opinion."  (*Gregory v. McDonnell Douglas Corp.* (1976) 17 Cal.3d 596, 601.)  But the mere fact that a statement responds to a lawsuit does not automatically render the statement a nonactionable opinion.  (See *Dickinson I*, *supra*, 17 Cal.App.5th at p. 686 [whether a statement is a "predictable opinion" is simply one factor to consider when assessing the totality of the circumstances].)  In *Information Control Corp*., the court noted that "the brief and conclusory language" used in a one-sentence press release disparaging

12

the plaintiff's lawsuit could not be the predicate for a defamation action. (*Information Control Corp.*, *supra*, 611 F.2d at p. 784.) By contrast and as discussed earlier, the letter's assessment of Young's lawsuit was far from conclusory. Moreover, the general tenor and content of the letter did not reveal anything predictably self-serving or one-sided. Instead, it was prefaced as providing Stanford Health employees with "the facts," suggesting a recital of facts rather than opinion. (Compare with *Ferlauto*, *supra*, 74 Cal.App.4th at pp. 1402–1403 [audience could reasonably expect the defendant to provide partisan opinions of a lawsuit since the defendant's book contained the same hyperbolic rhetoric].)

Thus, the statement in the letter, at a minimum, could be reasonably construed as either a fact or opinion. Young has therefore demonstrated the requisite minimal merit for her defamation claim to proceed. (See *Baral*, *supra*, 1 Cal.5th at pp. 384–385.)

## DISPOSITION

The trial court order denying the anti-SLAPP motion is affirmed.[3] Young is awarded her costs on appeal.

---

[3] While this appeal was pending, Young moved for sanctions against Stanford Health for filing a frivolous appeal. We deferred ruling on the motion until we considered the merits of Stanford Health's appeal. We now deny Young's motion because she has not demonstrated that "any reasonable attorney would agree that the appeal is totally and completely without merit" or that the appeal was taken solely to harass or cause delay. (See *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.)

13

_____

Chou, J.*

WE CONCUR:


_____

Fujisaki, Acting P. J.


_____

Petrou, J.


A161237

---

* Judge of the Superior Court of San Mateo County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14