Filed 11/18/25  Medvei v. Lakhman CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| SEBASTIAN MEDVEI,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ANN L. LAKHMAN,<br><br>    Defendant and Appellant. | G064902<br><br>(Super. Ct. No. 30-2024-01371433)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, David A. Hoffer, Judge. Reversed and remanded with directions.

Lewis Brisbois Bisgaard & Smith, Corinne C. Bertsche and David D. Samani for Defendant and Appellant.

Medvei Law Group and Adrien Medvei for Plaintiff and Respondent.

Defendant Ann L. Lakhman appeals from an order denying her special motion to strike under Code of Civil Procedure section 425.16 (anti-SLAPP motion).[1] Plaintiff Sebastian Medvei[2] and Lakhman are both attorneys. Medvei has filed a number of cases alleging violations of the Immigration Consultant Act (Bus. & Prof. Code, § 22440 et seq.; ICA), and Lakhman represented the defendants in several of them. In his complaint in this action, Medvei sued Lakhman (and others) for defamation, alleging Lakhman falsely stated to the press that (1) Medvei had engaged in extortion and (2) in the cases where Lakhman represented the defendants, the evidence showed no ICA violations had occurred.

The trial court denied Lakhman's anti-SLAPP motion. Although it found Lakhman met her burden of showing Medvei's defamation claim arose out of protected activity, it concluded Medvei met his burden to establish the requisite minimal merit of his claim. We conclude the court correctly concluded the first step of the anti-SLAPP inquiry was met but erred in concluding Medvei met his burden to provide admissible evidence showing his claim had at least minimal merit. We also find the court abused its discretion in overruling certain of Lakhman's evidentiary objections. We therefore reverse the order denying the anti-SLAPP motion and remand the matter to the trial court with directions to enter a new order granting the motion.

---

[1] All undesignated statutory references are to the Code of Civil Procedure.

[2] When used in this opinion, Medvei refers to plaintiff Sebastian Medvei, not his counsel Adrien Medvei.

FACTUAL AND PROCEDURAL BACKGROUND

Medvei is an attorney who, on behalf of a plaintiff named Immigrant Rights Defense Council, LLC (IRDC), has filed multiple lawsuits asserting violations of the ICA and seeking injunctive relief and attorney fees.[3] Lakhman, also an attorney, has represented defendants in some of those lawsuits, including a lawsuit against Shadi Afridi. Following a September 2023 trial in the lawsuit against Afridi, a statement of decision was issued on January 2, 2024, finding certain violations of the ICA.

In January 2024, Medvei filed his complaint in this action, naming as defendants Lakhman and Afridi.[4] The complaint asserted a single cause of action for defamation. It alleged, among other things, that Medvei represented the plaintiff in litigation against Afridi, and in January 2024, "the Superior Court of Orange County made a final determination

_____

[3] "The ICA makes it 'unlawful for any person, for compensation, other than persons authorized to practice law . . . to engage in the business or act in the capacity of an immigration consultant within this state except as provided by this chapter.'" (*Immigrant Rights Defense Council, LLC v. Hudson Ins. Co.* (2022) 84 Cal.App.5th 305, 309.) "In addition to limiting the services that can be provided by immigration consultants, the ICA contains various consumer protection regulations pertaining to advertising, bonding, and the manner in which immigration consultants can conduct their businesses." (*Ibid.*) A plaintiff bringing an action under the ICA is not necessarily required to have been a former client of the immigration consultant; instead, a party "who, upon information and belief, claims a violation of this chapter has been committed by an immigration consultant may bring a civil action for injunctive relief on behalf of the general public and, upon prevailing, shall recover reasonable attorneys' fees and costs." (Bus. & Prof. Code, § 22446.5, subd. (b).)

[4] In addition to naming Doe defendants, Medvei also sued Annel Delgado, a defendant in one of the actions Medvei filed. Lakhman is not alleged to have represented Delgado. Delgado and Afridi are not parties to this appeal.

3

that . . . Afridi was rampantly violating the ICA and enjoined him from doing so in the future." According to Medvei's complaint, "Afridi crafted a malicious scheme to harass and defame [Medvei] in hopes that it would deter [Medvei] from pursuing [Medvei's] client's case against" Afridi. The alleged scheme involved "Afridi making, and recruiting others to make, false statements about [Medvei] to others, both orally and in writing on social media, as well as via statements to the press. The false statements were of two types: 1) That [Medvei] was engaged in the crime of extortion and that . . . Afridi and hundreds of others were 'victims' of extortion by [Medvei]; and[] 2) That [Medvei] was engaged in filing lawsuits against people, like . . . Afridi, without any evidence to support the claims being made against them."

As to Lakhman, Medvei's complaint alleged she "participated in this scheme by stating to the press that [Medvei] was engaged in extortion and by stating that in the cases [Medvei] brought wherein . . . Lakhman, by and through her firm Lakhman & Kasamatsu LLP, was attorney for the defendant, including the case against . . . Afridi, the evidence showed no violations by the defendants (including, for example, as to . . . Afridi)." Lakhman allegedly "knew these statements were false because she knows what extortion is and knows that [Medvei] has never engaged in extortion." Lakhman also purportedly "knew her assertion to the press about the evidence in . . . Afridi's and other cases was false because the violations by . . . Afridi and others were completely obvious and in most cases were unequivocally documented (or directly demonstrated to . . . Lakhman)." The complaint alleged the statements constituted defamation per se.

In July 2024, Lakhman filed her anti-SLAPP motion. Lakhman argued the first step of the two-part anti-SLAPP inquiry was met under subdivisions (e)(2), (e)(3), and (e)(4) of section 425.16. On the second step of

the anti-SLAPP inquiry, Lakhman argued Medvei could not establish a probability of prevailing on his defamation claim against her because the allegedly defamatory statements were nonactionable opinions, Medvei could not establish the statements were false, and the fair reporting privilege and common law right to fair comment barred Medvei's claim.

Lakhman filed multiple documents in support of her anti-SLAPP motion. One of the exhibits she filed was an online article from NBC Los Angeles entitled "Lawyer sues hundreds of local small businesses for allegedly violating law. Some call it 'extortion'" (the NBC Los Angeles article). The article stated it was published October 19, 2023, and was written by Eric Leonard. The article recounted, among other things, interviews with several immigration consultants who had been sued, including Afridi. The article also identified Lakhman as an attorney defending Afridi and several other immigration consultants in lawsuits, and the article stated Lakhman "said she believes the cases she's working on stink of a shakedown." The article also stated Lakhman "said the complaints filed against her clients included no evidence of a violation, and so far, she found no violations when she prepared her cases for trial." Additionally, the article described an interview with Medvei.

Lakhman also filed a declaration in support of her anti-SLAPP motion. In it, she stated, among other things, "[i]n connection with [her] representation of . . . Afridi in the *Afridi* [a]ction, [she] was interviewed by reporter Eric Leonard with respect to her observations as defense counsel as to lawsuits that IRDC had filed." Lakhman declared that, in her interview with Leonard, she "expressed [her] good faith opinions regarding the law (in particular, the way the ICA is structured), the nature of the complaints that IRDC had filed (in particular, the lack of factual specificity and the similarity

5

of the complaints), and [her] opinion regarding the way the statutory scheme allowed a litigant to weaponize the statutory provisions against immigration consultants. At no point did [she] intend to convey that [she] believed that [Medvei] had committed a crime, extortion, or anything of the sort. Rather, [she] expressed [her] opinion regarding the ongoing lawsuits and [her] opinion regarding the merits."[5]

In October 2024, Medvei filed an opposition to the anti-SLAPP motion and supporting documents. Medvei argued Lakhman's motion failed to address the actual statements at issue in the case, which he described as (1) "Lakhman's statement that [Medvei's] lawsuits and settlements of those lawsuits 'reek of extortion,'" and (2) "Lakhman's factual statement in her video interview that, to her personal knowledge, [Medvei's] lawsuits against her clients are not supported by *any* evidence of violations of the ICA." Medvei also argued the first step of the anti-SLAPP inquiry was not met, but even if it were, he had met his burden on the second step by demonstrating a probability of prevailing on the merits of his defamation claim.

As support for his assertion that Lakhman said Medvei's lawsuits and settlements "reek of extortion," Medvei relied on two exhibits he attached to his declaration, which he submitted as part of his opposition. The first

_____

[5] Lakhman also filed a declaration from her counsel and the following additional exhibits: an online article from NBC San Diego; an online article from telemundo20.com (which Lakhman's counsel said he understood to be a Spanish language version of the NBC San Diego article); results from a search for cases where IRDC is a party; the complaint from IRDC's lawsuit against Afridi and the complaints from certain other IRDC lawsuits; Medvei's trial brief and closing brief in the lawsuit against Afridi; the final statement of decision in the lawsuit against Afridi; and certain other documents related to IRDC. Lakhman filed a request for judicial notice of many of the exhibits she submitted.

exhibit was a copy of an online article in Spanish entitled "Abogado demanda a cientos de consultores de inmigracion por presuntamente violar la ley," which appeared to be from a Spanish-language website, Telemundo 52 (the Telemundo article).[6] The second exhibit was a certified English translation of the online Telemundo article, which Medvei said had been prepared by a translator at the American Translation Association. According to the translation, the article is titled "Attorney sues hundreds of immigration consultants for allegedly violating the law" and was authored by Eric Leonard and published October 20, 2023. Also according to the translation, the Telemundo article appears to be very similar to, but to have some differences from, the NBC Los Angeles article. Notably, the translation of the Telemundo article stated that Lakhman had "said she believes the cases she is working on reek of extortion," instead of "stink of a shakedown," which was the phrase attributed to her in the English-language version of Leonard's article.

As support for his assertion that Lakhman said, to her personal knowledge, Medvei's lawsuits against her clients were not supported by any evidence of violations, Medvei submitted as an exhibit a video broadcast (the broadcast).[7] The broadcast consisted of visual images with a voiceover narration by a reporter. Among other things, the voiceover stated the "I-team

_____

[6] Medvei's declaration stated "NBC and its affiliate company Telemundo published both video reports and written articles about" him, but it did not identify the website from which he obtained the Telemundo article. Based on the exhibit he submitted, the Telemundo article appears to be from www.telemundo52.com.

[7] As discussed above, Medvei's declaration states NBC and Telemundo published video reports about him. Medvei's declaration, however, does not specifically state where this video was broadcast.

has found more than 300 nearly identical lawsuits filed against immigration businesses in L.A., Orange, and San Diego Counties, and some of those sued say they are fighting back in court." The voiceover also stated the "I-team talked with more than a dozen of the consultants who had been sued," and the video included clips of interviews with a few of them, including Afridi. The voiceover introduced Lakhman as the lawyer currently defending Afridi and certain others, and said Lakhman "says she believes the cases she is working on stink of a shakedown." Lakhman is then seen in an interview saying, "the plaintiff attorney [*sic*] or the plaintiff himself use the [ICA] as a weapon to attack all the other defendants and make them pay." In another voiceover, the broadcast stated Lakhman had said the ICA was unusual because it allows a private person to stand in for the state, file a lawsuit, and collect the fees. The reporter is shown asking Lakhman if, when these people are sued, there is evidence they have broken the law, to which Lakhman replied: "No, not from the complaint." The reporter is then shown asking if there is evidence found later that the defendants have broken the law, to which Lakhman responded: "To my knowledge, with my clients, no." The broadcast also shows an interview with Medvei, during which Medvei said there is proof of rampant violations in every case they file. In a voiceover, the reporter noted court records show Medvei has collected more than $2.2 million from the cases. The reporter is shown on camera stating that, although most of the cases they have been following settled out of court, Medvei had won at least two of the cases at trial and the judge in Afridi's case was expected to announce a verdict later.

In his declaration filed in opposition to the anti-SLAPP motion, Medvei discussed, among other things, his ICA practice. Medvei declared he "represent[s] both victims of immigration consultants and a watchdog

8

association, IRDC, which seeks preventative injunctive relief against violations of the ICA on behalf of the general public." He stated Lakhman was an attorney for four defendants, and "[f]rom the commencement of her representation of those defendants, . . . Lakhman was in possession of the evidence of their violations by virtue of the evidence being publicly available, the evidence being produced in discovery, and by virtue of . . . Lakhman ostensibly having access to her own clients' information." Medvei said those defendants all submitted complaints to the State Bar about him shortly after they retained Lakhman, and he asserted that a copy of a template bar complaint contains metadata showing it was authored by Lakhman. Medvei stated each of the bar complaints by those defendants was closed on the merits.[8] Medvei's declaration also said a trial for one of Lakhman's clients occurred in August 2023, Afridi's trial occurred on September 26, 2023, and Medvei ultimately prevailed in both cases. Medvei also declared two of Lakhman's clients stipulated to judgments enjoining them from further violating the ICA and that he was awarded attorney fees in those matters. Medvei declared he has "never threatened any person with a report to criminal law enforcement or an administrative agency if [he is] not paid money" and "it is [his] policy to not make criminal or administrative referrals in connection with cases [he is] prosecuting civilly, at all."

---

[8] Medvei also included as exhibits to his declaration a copy of the template bar complaint and its metadata, the final statements of decision in the lawsuit against Afridi and the lawsuit against a different defendant, an attorney fee award in a case against a different defendant, a letter from an immigration consultant, and an email from Afridi. Medvei also filed an opposition and objection to Lakhman's request for judicial notice of certain exhibits.

9

In October 2024, Lakhman filed her reply brief in support of her anti-SLAPP motion. Lakhman argued, among other things, there was no admissible evidence she ever made the statement "reek of extortion." Lakhman noted Medvei is relying on an English translation of a reporter's summary in the Spanish-language Telemundo article of what she supposedly said. She argued the reporter's summary is not a statement by her, the reporter's summary is inadmissible hearsay because it is an out-of-court statement offered to prove what she said, and the translation is yet another level of inadmissible hearsay that is inaccurate. As to her statement that she had seen no evidence showing any ICA violations by her clients, Lakhman asserted it was a nonactionable opinion.

Lakhman also filed objections to the evidence Medvei offered in his opposition to her motion. Among Lakhman's objections were hearsay objections to both the Telemundo article and its translation. Medvei filed a response to Lakhman's objections to his evidence.[9]

In November 2024, the trial court denied Lakhman's anti-SLAPP motion. The court found Lakhman had met her burden on the first step of the anti-SLAPP motion to show the alleged statements attributed to her were protected activity under section 425.16, subdivisions (e)(3) and (4). The court rejected Medvei's argument that Lakhman's statements are not protected activity because they indisputably constitute the crime of extortion, finding Medvei's evidence did "not conclusively establish illegality as a matter of law."

---

[9] Medvei also submitted a custodian of records declaration from an employee of NBCUniversal Media, LLC related to the copy of the broadcast footage. Lakhman does not, on appeal, contest the authenticity of the broadcast footage.

10

Regarding the second step of the anti-SLAPP analysis, the trial court determined the two statements at issue are defamatory per se and Medvei had "submitted sufficient evidence to demonstrate the falsity of the statements and that . . . Lakhman had made the statements." The court therefore concluded Medvei's "claim appears to have the requisite minimal merit." The court also determined the statements were *not* nonactionable opinions, and the fair reporting privilege and common law right of fair comment did not bar Medvei's claim.

The trial court overruled Lakhman's evidentiary objections. It granted in part and denied in part Lakhman's request for judicial notice.

DISCUSSION

I.

THE ANTI-SLAPP STATUTORY FRAMEWORK AND STANDARD OF REVIEW

"'[T]he anti-SLAPP statute is designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern. [Citations.] To that end, the statute authorizes a special motion to strike a claim "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).)'" (*Sanchez v. Bezos* (2022) 80 Cal.App.5th 750, 762 (*Sanchez*).)

An "'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue'" includes the following four categories: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under

11

consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

"'A court evaluates an anti-SLAPP motion in two steps. "Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged. [Citations.] If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least 'minimal merit.'" [Citation.]' [Citation.] "'[I]n making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." [Citation.]' [Citation.] 'Although not mentioned in the SLAPP Act, the Code of Civil Procedure also allows a court to consider, in lieu of an affidavit, certain written declarations.'" (*Sanchez, supra*, 80 Cal.App.5th at pp. 762–763.)

The second step has been described as a ""summary-judgment-like procedure."'" (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940.) "'The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. [Citation.] "[C]laims with the requisite minimal merit may proceed."' (*Ibid.*) "[A] plaintiff seeking to

12

demonstrate the merit of the claim 'may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence.'" (*Ibid.*)

We review de novo the trial court's denial of the anti-SLAPP motion and review its evidentiary rulings for abuse of discretion. (*Sanchez, supra*, 80 Cal.App.5th at p. 763.)

## II.

### THE FIRST STEP OF THE ANTI-SLAPP INQUIRY

The trial court determined the first step of the anti-SLAPP analysis was met under section 425.16, subdivisions (e)(3) and (4). We agree the first step was met under at least section 425.16, subdivision (e)(4).[10] We also conclude the court correctly determined Lakhman was not precluded from invoking the anti-SLAPP statute based on the exception articulated in *Flatley v. Mauro* (2006) 39 Cal.4th 299, 320 (*Flatley*).

*A. Section 425.16, Subdivision (e)(4)*

For subdivision (e)(4) of section 425.16, the California Supreme Court has set forth a two-part test: "we first 'ask what "public issue or . . . issue of public interest"' is implicated by the challenged activity. [Citation.] Second, we look to the 'functional relationship' between the challenged activity and the 'public conversation' about that issue, and ask whether the activity '"contribute[s]"' to public discussion of the issue." (*Geiser v. Kuhns* (2022) 13 Cal.5th 1238, 1249 (*Geiser*).) The first part of this test is "an objective inquiry" and "is satisfied so long as the challenged speech or conduct, considered in light of its context, may reasonably be understood to

---

[10] Given our conclusion, we need not address whether section 425.16, subdivisions (e)(2) and (3) are also met here.

implicate a public issue, even if it also implicates a private dispute. Only when an expressive activity, viewed in context, cannot reasonably be understood as implicating a public issue does an anti-SLAPP motion fail at" this first part. (*Id.* at pp. 1253–1254.) Our Supreme Court has further noted the analysis of the first and second parts may overlap and, in some cases, "it may be more efficient to look to the whole context from which the conduct underlying the lawsuit arises, rather than attempting to parse which considerations fall under which of" the two steps. (*Id.* at p. 1256.)

Here, Lakhman's alleged statements meet the two-part test under section 425.16, subdivision (e)(4) because they implicated a public issue and contributed to the public discussion. As the trial court correctly recognized, Lakhman's alleged statements to the press implicated an issue of public interest and furthered the discourse regarding potential misuse of the ICA. The NBC Los Angeles article and the broadcast, among other things, noted Medvei had filed more than 300 cases, featured interviews with defendants who had been sued by Medvei, and included Lakhman's comment that the ICA had been used as a weapon. Medvei asserts there was no issue of public interest here because the alleged statements by Lakhman purportedly targeted him individually. Although the alleged statements to the press concerned Medvei and his litigation against Lakhman's clients, it also implicated a broader public issue regarding potential misuse of the ICA. (See *Geiser, supra*, 13 Cal.5th at p. 1253 [noting challenged speech,

14

"considered in light of its context, may reasonably be understood to implicate a public issue, even if it also implicates a private dispute"].)[11]

Medvei relies on *All One God Faith, Inc. v. Organic & Sustainable Industry Standards, Inc.* (2010) 183 Cal.App.4th 1186 (*All One God Faith*), but that case is inapposite. There, a trade association, Organic Sustainable Industry Standards, Inc. (OASIS), sought "to develop a standard that would provide a definition of 'organic' specific to beauty and personal care products and would permit its members whose products meet this standard to advertise using an 'OASIS Organic' seal on the product." (*Id.* at pp. 1191–1192.) The plaintiff alleged the "certification would constitute unfair competition and misleading advertising." (*Id.* at p. 1192.) The appellate court concluded the first step of the anti-SLAPP inquiry was not met. (*Id.* at p. 1200.) It explained, "while OASIS's articulation and dissemination of a standard regarding what makes a personal care product 'organic' may constitute an exercise of its right of free speech on a matter of public concern, we do not agree that OASIS's certification of commercial products—the activities that [the plaintiff] seeks to enjoin—are in

---

[11] Medvei also argues the first step of the anti-SLAPP analysis must be based only "on a review of the pleaded allegations in the complaint, *not* on the parties' evidence." In Medvei's view, "[i]t is improper to consider matters outside of the pleadings of a petitioner, plaintiff[,] or cross-complainant in making the determination as to whether, under the 'first prong,' a cause of action arises from protected activity." To the extent Medvei is asserting the trial court erred because the first step of the anti-SLAPP inquiry must be limited to only consideration of the complaint, that is an incorrect statement of the law. As the California Supreme Court has recognized, "[i]n deciding whether the initial 'arising from' requirement is met, a court considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.'" (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89; see also § 425.16, subd. (b)(2).)

15

furtherance of that speech." (*Id.* at p. 1203.) Moreover, the appellate court noted OASIS had conceded its speech was commercial speech. (*Id.* at p. 1205.) The appellate court further stated, "the use of the 'OASIS Organic' seal on member products is not activity directed to public discussion of organic standards in general, but is only speech about the contents and quality of the product" and "it is not intertwined with speech about, or contributing to the debate on, the merits of a particular definition of 'organic.'" (*Id.* at pp. 1209–1210.)

Here, we do not find Lakhman's alleged statements to the press are similar to the organic certification at issue in *All One God Faith*. Instead, Lakhman's alleged comments implicated and contributed to public discussion regarding potential misuse of the ICA.[12]

Medvei also argues the anti-SLAPP motion should have been denied because it did not actually address the alleged statements by Lakhman that form the basis of his complaint. We find no merit in this argument. Lakhman met her burden of establishing the challenged allegations arise from protected activity in which she engaged. Her motion argued Medvei "contends that [Lakhman] participated in this so-called scheme by 'stating to the press that [Medvei] was engaged in extortion' and

---

[12] Medvei also cites *Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122. In that case, the plaintiff and defendant were "aficionados of token collecting," and the defendant allegedly made statements to others and in a token collectors' association monthly newsletter regarding the plaintiff stealing a token from the defendant. (*Id.* at pp. 1127–1129.) The appellate court concluded a public interest was not implicated, and the court underscored it was "alleged that defendant began a private campaign, so to speak, to discredit plaintiff in the eyes of a relatively small group of fellow collectors." (*Id.* at pp. 1127, 1134–1135.) The circumstances in *Weinberg* are not analogous to this case, particularly given the alleged statements here were made to a news reporter and implicated the potential misuse of the ICA.

16

'by stating that in cases [Medvei] brought wherein [Lakhman] was attorney for the defendant, including the case against Defendant Afridi, the evidence showed no violations by the defendants (including, for example, as to Defendant Afridi).'" Those two alleged statements to the press were the basis for the complaint's defamation claim against Lakhman. Lakhman's motion then argued the first step of the anti-SLAPP inquiry was met, including that a matter of public interest was implicated.[13]

## B. The Flatley Exception

In *Flatley*, the California Supreme Court held that, "where a defendant brings a motion to strike under section 425.16 based on a claim that the plaintiff's action arises from activity by the defendant in furtherance of the defendant's exercise of protected speech or petition rights, but either the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law, the defendant is precluded from using the anti-SLAPP statute to strike the plaintiff's action." (*Flatley, supra*, 39 Cal.4th at p. 320.) "[C]ourts have consistently held that the *Flatley* exception from the anti-SLAPP statute is narrow." (*Osborne v. Pleasanton Automotive Co., LP* (2024) 106 Cal.App.5th 361, 378; see also *Flatley*, at p. 332, fn. 16 ["emphasiz[ing] that [its] conclusion that [the attorney's] communications constituted criminal

---

[13] Medvei's argument appears to suggest Lakhman's motion must be denied because it could only discuss the alleged statements in the complaint in isolation. Lakhman, however, did not need to limit her motion's discussion solely to the purported statements regarding extortion and lack of evidence, particularly given that the NBC Los Angeles article and the broadcast do not state Lakhman said Medvei was committing "extortion." As discussed above and below, the context of the alleged statements in the complaint can be relevant to both the first and second steps.

17

extortion as a matter of law are based on the specific and extreme circumstances of this case"].)

Medvei argues the anti-SLAPP motions should have been denied because Lakhman's conduct constituted the crime of extortion as a matter of law. The trial court determined the *Flatley* exception does not apply. We agree with the court.

Medvei argues he "alleged that [Lakhman] and . . . Afridi conspired to instill fear in [Medvei], through false public statements about [Medvei] that were intended to vilify [Medvei] to the public and law enforcement, in order to gain an advantage against [Medvei] in litigation." Medvei asserts Lakhman failed to produce evidence contradicting these allegations. According to Medvei, "because the allegations of the [c]omplaint can be considered for this exemption, and [Lakhman] provided no evidence to the contrary, [Lakhman] 'conceded the point' and the [t]rial [c]ourt could have denied the [a]nti-SLAPP [m]otion on this ground."

Medvei's argument is unavailing. "[C]onduct that would otherwise be protected by the anti-SLAPP statute does not lose its coverage simply because it is *alleged* to have been unlawful." (*Hansen v. California Dept. of Corrections and Rehabilitation* (2008) 171 Cal.App.4th 1537, 1545.) In the trial court, after Medvei argued in his opposition that Lakhman's conduct was criminal, Lakhman argued in her reply the *Flatley* exception did not apply and Medvei had failed to establish she engaged in illegal conduct as a matter of law. Lakhman did not concede the issue by not submitting with her anti-SLAPP motion a declaration denying that she had committed extortion. (See *Zucchet v. Galardi* (2014) 229 Cal.App.4th 1466, 1479 [noting the defendant "did not have the burden to establish the validity of his First Amendment activities as a matter of law under the first prong of the anti-

18

SLAPP inquiry" and "it would be unreasonable to interpret [the defendant's] failure to expressly *deny* [the plaintiff's] allegations in his moving papers as a tacit concession of illegal activity"].)

Medvei also argues the evidence before the court on Lakhman's motion was similar to conduct found sufficient to constitute extortion in *Cohen v. Brown* (2009) 173 Cal.App.4th 302. We are not persuaded. In *Cohen,* the appellate court, in applying the *Flatley* exception, concluded the attorney defendant's actions with respect to the filing of a complaint with the State Bar against the attorney plaintiff constituted extortion. (*Cohen,* at p. 318.) The appellate court highlighted that the attorney defendant's communications with the attorney plaintiff and his law partner "demonstrate that the purpose of filing the State Bar complaint was to gain an advantage in the underlying action by pressuring plaintiff and his law partner into immediately signing off on the settlement check." (*Id.* at p. 317.) The appellate court cited an email sent by the attorney defendant in which he "insisted that the State Bar would essentially make plaintiff's life a living hell unless plaintiff demonstrated good faith to the State Bar by immediately signing off on the settlement check." (*Ibid.*)

Here, by contrast, the evidence did not conclusively establish Lakhman had committed the crime of extortion.[14] "Extortion is the obtaining of property or other consideration from another, with his or her consent, or the obtaining of an official act of a public officer, induced by a wrongful use of force or fear, or under color of official right." (Pen. Code, § 518, subd. (a).) Medvei did not set forth the elements of the crime of extortion, much less offer evidence demonstrating Lakhman's conduct met each of these elements.[15]

---

[14] Medvei contends he provided "unrebutted evidence" that *Afridi* had "threatened [Medvei] with administrative and criminal reprisal." The email cited by Medvei for this point appears to be from Afridi in October 2021 and, notably, does not list Lakhman as a recipient. Even if Afridi's email could be construed as a threat (an issue we need not decide), it does not conclusively establish extortion *by Lakhman*. Indeed, Medvei's own declaration shows this email was sent *before* Lakhman represented Afridi in the lawsuit. In his declaration, Medvei stated "the only direct communication [he] ever had with one of [Lakhman's] clients was with . . . Afridi, after filing the original lawsuit against him in Los Angeles County and *during the time that he was a self-represented litigant*, which interaction ultimately involved . . . Afridi threatening to report [Medvei] to various law enforcement and administrative agencies in an apparent attempt to get [Medvei] to cease pursuing the case against him." (Italics added.)

[15] Under Penal Code section 523, subdivision (a), "Every person who, with intent to extort property or other consideration from another, sends or delivers to any person any letter or other writing, whether subscribed or not, expressing or implying, or adapted to imply, any threat such as is specified in [s]ection 519 is punishable in the same manner as if such property or other consideration were actually obtained by means of such threat." Additionally, under Penal Code section 524, "Every person who attempts, by means of any threat, such as is specified in [s]ection 519 of this code, to extort property or other consideration from another is punishable by imprisonment in the county jail not longer than one year or in the state prison or by fine not exceeding ten thousand dollars ($10,000), or by both such fine and imprisonment."

THE SECOND STEP OF THE ANTI-SLAPP INQUIRY

The elements of a defamation claim are "'"(a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage."'" (*Sanchez, supra*, 80 Cal.App.5th at p. 763.)[16] As discussed above, Medvei's defamation cause of action against Lakhman was based on her alleged statements to the press that (1) the evidence showed no violations of the ICA by the defendants she represented and (2) Medvei "was engaged in extortion." We conclude the trial court erred in finding Medvei met his burden on the second step to establish his defamation cause of action against Lakhman had minimal merit.

*A. The Alleged Statement that the Evidence Showed No Violations by Lakhman's Clients*

In the broadcast, when Lakhman was asked whether evidence was found later (i.e., after the complaints were filed by Medvei) that the defendants sued by Medvei had broken the law, she responded: "[t]o my knowledge, with my clients, no." Lakhman argues her statement regarding evidence was a nonactionable opinion. We agree. We conclude the trial court erred by determining this statement was *not* nonactionable opinion.[17]

"'"The sine qua non of recovery for defamation . . . is the existence of falsehood." [Citation.] Because the statement must contain a provable

---

[16] The trial court found the statements were defamatory per se, citing the statutes concerning libel and slander. (Civ. Code, §§ 45a, 46.)

[17] The NBC Los Angeles article did not purport to directly quote Lakhman. Instead, it summarized her response by stating she "said the complaints filed against her clients included no evidence of a violation, and so far, she found no violations when she prepared her cases for trial."

falsehood, courts distinguish between statements of fact and statements of opinion for purposes of defamation liability. Although statements of fact may be actionable as libel, statements of opinion are constitutionally protected. [Citation.]' [Citation.] That does not mean that statements of opinion enjoy blanket protection. [Citation.] To the contrary, where an expression of opinion implies a false assertion of fact, the opinion can constitute actionable defamation. [Citation.] The critical question is not whether a statement is fact or opinion, but "'whether a reasonable fact finder could conclude the published statement declares or implies a provably false assertion of fact.'"" (*GetFugu, Inc. v. Patton Boggs LLP* (2013) 220 Cal.App.4th 141, 155–156 (*GetFugu*).)

"To ascertain whether the statements in question are provably false factual assertions, courts consider the totality of the circumstances." (*GetFugu, supra*, 220 Cal.App.4th at p. 156; see *Baker v. Los Angeles Herald Examiner* (1986) 42 Cal.3d 254, 260–261 [stating "[f]irst, the language of the statement is examined" and "[n]ext, the context in which the statement was made must be considered"].) "Where the language of the statement is 'cautiously phrased in terms of apparency,' the statement is less likely to be reasonably understood as a statement of fact rather than opinion." (*Baker,* at pp. 260–261, fn. omitted.) "Part of the totality of the circumstances used in evaluating the language in question is whether the statements were made by participants in an adversarial setting. '[W]here potentially defamatory statements are published in a . . . setting in which the audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole, language which generally might be considered as statements of fact may well assume the character of statements of opinion.'" (*Ferlauto v. Hamsher* (1999) 74 Cal.App.4th 1394, 1401–1402

22

(*Ferlauto*).) "Whether challenged statements convey the requisite factual imputation is ordinarily a question of law for the court." (*GetFugu*, at p. 156.) "If the court concludes the statement could reasonably be construed as either fact or opinion, the issue should be resolved by a jury." (*Ferlauto*, at p. 1401.)

*GetFugu* is instructive. There, one of the alleged defamatory statements was a tweet by an attorney stating: "'GetFugu runs an organization for the benefit of its officers and directors, not shareholders and employees. The RICO suit was not frivolous. The 500K lawsuit is frivolous, however, so buyer be wary.'" (*GetFugu, supra*, 220 Cal.App.4th at p. 156.) The appellate court found the tweet was nonactionable because "[d]eprecatory statements regarding the merits of litigation are 'nothing more than "the predictable opinion" of one side to the lawsuit' and cannot be the basis for a defamation claim." (*Ibid.*; see also *Ferlauto, supra*, 74 Cal.App.4th at p. 1403 [noting descriptions of a lawsuit and motion "as 'stupid,' 'laughed at,' 'a joke,' 'spurious,' and 'frivolous,' are common characterizations which are nothing more than 'the predictable opinion' of one side to the lawsuit"].) It further explained the statement regarding the company being run for the benefit of the officers and directors was the defendant's subjective opinion regarding corporate governance. (*GetFugu,* at p. 156.)

Like the statements in *GetFugu*, Lakhman's statement that, to her knowledge, there was no evidence demonstrating her clients had violated the law is simply a "[d]eprecatory statement[ ]" regarding the merits of Medvei's complaints and "'nothing more than "the predictable opinion" of one side to the lawsuit.'" (*GetFugu, supra*, 220 Cal.App.4th at p. 156.) The

23

broadcast made clear Lakhman was litigating against Medvei.[18] Moreover, Lakhman's statement about the lack of evidence, to her knowledge, of violations is similar to the reference to a lawsuit being "frivolous" in the tweet in *GetFugu*. (*Id.* at p. 156.)[19]

*B. The Alleged Statement that Medvei Was Engaged in Extortion*

The complaint alleged Lakhman told the press Medvei was engaged in "extortion." As a threshold matter, it was Medvei's burden to produce *admissible evidence* Lakhman actually made this purportedly defamatory statement. (See *Sanchez, supra*, 80 Cal.App.5th at pp. 758–759, 764 [affirming granting of anti-SLAPP motion where the only evidence plaintiff offered to prove defendants made the purportedly defamatory statements was inadmissible hearsay].) Medvei did not meet that burden.

---

[18] On appeal, Medvei also argues Lakhman's statement the ICA was being used as a "weapon" was defamatory per se. This statement, however, was not pleaded in the complaint as a basis for the defamation cause of action. Indeed, Medvei acknowledges in his respondent's brief that Lakhman's statement about the ICA being weaponized was not subject to the anti-SLAPP motion because it was not alleged in the complaint. In any event, we conclude Lakhman's comment the ICA was being used as a weapon was hyperbole and nonactionable opinion when viewed under the totality of the circumstances.

[19] Medvei argues Lakhman's comment was not analogous to calling his lawsuits frivolous because, according to Medvei, frivolous "means not having any serious purpose or value and does not, on its face, suggest specific facts that make the case frivolous." We are not persuaded. Given the totality of circumstances here, we conclude Lakhman's statement is indeed tantamount to calling a lawsuit frivolous. (See *McCluskey v. Henry* (2020) 56 Cal.App.5th 1197, 1205 [noting "[a] claim is factually frivolous if it is '"not well grounded in fact"'"]; § 128.5, subd. (b)(2) [stating "'[f]rivolous' means totally and completely without merit or for the sole purpose of harassing an opposing party"].)

24

In opposing Lakhman's anti-SLAPP motion, Medvei relied on the Telemundo article and its English translation to support his assertion that Lakhman said "she believes the cases she is working on reek of extortion." Lakhman, however, argues the trial court abused its discretion in overruling her objection to both the article and the translation as inadmissible hearsay; she contends Medvei failed to submit *admissible* evidence that she actually said he committed extortion. We agree the court abused its discretion in overruling her objections. Because both the Telemundo article and its translation were inadmissible hearsay, Medvei failed to submit admissible evidence that Lakhman defamed him by asserting he committed extortion.

"'Hearsay is an out-of-court statement offered for the truth of the matter asserted and is generally inadmissible.'" (*Sanchez, supra*, 80 Cal.App.5th at p. 764; see also Evid. Code, § 1200.) "In contrast, '"[w]hen evidence that certain words were spoken or written is admitted to prove that the words were uttered [or written] and *not* to prove their truth, the evidence is not hearsay. [Citations.]'" [Citation.] '"That means that the statement must be capable of serving its nonhearsay purpose regardless of whether the [finder of fact] believes the matters asserted to be true."'" (*Sanchez*, at p. 764.) Relying on these principles, the appellate court in *Sanchez* held that statements in the plaintiff's declaration recounting what reporters told him the defendants had said were hearsay because the reporters' statements were being offered for their truth. (*Id.* at p. 765.)

In *Gallagher v. Connell* (2004) 123 Cal.App.4th 1260 (*Gallagher*), the appellate court reached a similar conclusion. There, the plaintiff attempted to meet his burden on the second step of the anti-SLAPP inquiry by submitting a copy of a newspaper "article containing the allegedly defamatory statement and attributing the statement to" the defendant. (*Id.*

25

at p. 1266.) The appellate court concluded this was hearsay: "When offered in this context the newspaper article is hearsay because it is an out-of-court statement by the reporter offered to prove [the defendant] made the remark attributed to her in the article. No exception to the hearsay rule is applicable to this statement. Therefore, the statement is not 'admissible' evidence." (*Ibid.*)[20]

The same is true here. The Telemundo article and the translation are both inadmissible hearsay because they are out-of-court statements by the reporter that Medvei offered to prove that Lakhman made the remark attributed to her in the article. (See *Gallagher, supra*, 123 Cal.App.4th at p. 1266.)[21]

Although both *Gallagher* and *Sanchez* were cited in Lakhman's opening brief on appeal, Medvei does not address either. Instead, he asserts "hearsay statements are admissible, not for their truth, but as evidence of their utterance, i.e., hearsay is admissible to show that the statement was in fact made, instead of for the proposition that the statement is true." It is well-established that, "'"[w]hen evidence that certain words were spoken or written is admitted to prove that the words were uttered [or written] and *not* to prove their truth, the evidence is not hearsay."'" (*Sanchez, supra*, 80 Cal.App.5th at 764.) But that is not what we have here. Medvei is offering

---

[20] Although the appellate court ultimately found the defendant had waived the hearsay objection by not properly asserting it in the trial court (*Gallagher, supra*, 123 Cal.App.4th at pp. 1266–1269), that is not the case here. Lakhman asserted hearsay objections in the trial court to both the Telemundo article and its translation.

[21] Lakhman also argues the translation of the Telemundo article creates an additional level of hearsay because the translation was not accurate. Given our conclusion, we need not address this issue.

the reporter's statement in the article about what Lakhman told him for its truth—i.e., to prove that the reporter truthfully recounted what Lakhman said to him. Put another way, the reporter's statement in the article about what Lakhman said to him is only relevant *if the reporter's statement is true*. That makes it hearsay.

*Cornell v. Berkeley Tennis Club* (2017) 18 Cal.App.5th 908—one of the cases cited by Medvei—underscores the point. In that action, a tennis club employee whose employment had been terminated sued on a host of claims, including one for defamation. (*Id.* at p. 918.) She asserted, among other things, that defamatory statements had been made about her to several non-club members concerning the circumstances of her termination. (*Id.* at pp. 949–950.) The appellate court ultimately reversed the grant of summary adjudication for defendants on plaintiff's defamation claim, but it agreed with the lower court's hearsay ruling excluding statements by plaintiff and her father about what they had been told by certain non-club members regarding what those non-club members had been told by *others* about plaintiff's termination. (*Id.* at pp. 950–951.) The appellate court explained that, although direct testimony by the non-club members about what they had been told might be admissible, the plaintiff "does not explain how her and her father's statements about what the non-Club members said they were told also fall into a hearsay exception." (*Id.* at p. 950.) The appellate court cited the well-established principle that "'multiple hearsay is admissible for its truth only if each hearsay layer separately meets the requirements of a hearsay exception.'" (*Ibid.*, citing *People v. Arias* (1996) 13 Cal.4th 92, 149.) The same reasoning applies with equal force here: the statement in the article about what the reporter says Lakhman said to him is hearsay.

Medvei argues it is significant that Lakhman's declaration did not deny she made the statement Medvei attributes to her. Even if correct, that is irrelevant. It was not Lakhman's burden on her motion to disprove Medvei's allegation about what she said; it was Medvei's burden to produce *admissible* evidence that she actually made the alleged defamatory statement that the lawsuits he was filing "reek of extortion." He failed to do so.

On appeal, Medvei argues for the first time it does not matter if the Telemundo article and its translation are inadmissible because Lakhman submitted the NBC Los Angeles article with her anti-SLAPP motion. The NBC Los Angeles article stated Lakhman told the reporter "she believes the cases she's working on stink of a shakedown,"[22] and Medvei now asserts this phrase is the same thing as accusing him of committing the crime of extortion. We reject this argument.[23]

As an initial matter, we note Medvei did not make this argument in the trial court. Nor does his complaint allege Lakhman's statement that the cases she was defending "stink of a shakedown" amounted to an accusation that he was committing the crime of extortion; his complaint simply alleged Lakhman told the press he "was engaged in extortion," and in his opposition to Lakhman's anti-SLAPP motion, Medvei relied on the Telemundo article and its translation as evidence supporting that allegation. It was not until his brief on appeal that Medvei first argued that Lakhman's

---

[22] At our invitation, the parties filed supplemental briefing regarding whether this purported statement is a nonactionable opinion.

[23] Given our conclusion, we need not address whether, because the NBC Los Angeles article contains inadmissible hearsay, Lakhman waived admissibility arguments by submitting it with her motion.

28

purported "shakedown" statement is the same as accusing him of the crime of extortion.

Even if Medvei could properly raise this argument for the first time on appeal, it fails. The statement in the NBC Los Angeles article that Lakhman told the reporter "she believes the cases she's working on stink of a shakedown" is a nonactionable opinion. It cannot reasonably be understood as Lakhman expressly or impliedly making a factual assertion that Medvei was committing the crime of extortion. It was simply a "[d]eprecatory statement[ ] regarding the merits of litigation" and "'nothing more than "the predictable opinion" of one side to the lawsuit' [that] cannot be the basis for a defamation claim." (See *GetFugu, supra*, 220 Cal.App.4th at p. 156.)

Medvei argues there is "no legally cognizable distinction" between Lakhman's purported statement and the statements at issue in *Dickinson v. Cosby* (2017) 17 Cal.App.5th 655 (*Dickinson I*) and *Dickinson v. Cosby* (2019) 37 Cal.App.5th 1138 (*Dickinson II*). We disagree. In *Dickinson I* and *II*, the plaintiff had alleged William Cosby raped her, and the statements at issue were assertions by Cosby's lawyer that plaintiff's accusations were false. (*Dickinson I*, at pp. 660, 687, 690; *Dickinson II*, at pp. 1144, 1164.) Addressing whether Cosby could be liable for his attorney's statements, the appellate courts concluded at the second step of the anti-SLAPP inquiry that there were actionable statements of fact. (*Dickinson I*, at pp. 685–691; *Dickinson II*, at pp. 1163–1166.) We do not find the purported statement by Lakhman that "she believes the cases she's working on stink of a shakedown" to be analogous to the statements by Cosby's lawyer in *Dickinson I* and *II* that plaintiff lied about being raped. Moreover, the appellate courts in those cases underscored the statements were not phrased cautiously, whereas here, Lakhman's purported statement was prefaced with she "believes." (*Dickinson*

29

*I*, at pp. 687, 690 [noting demand letter "repeatedly and unconditionally" said the rape allegations were "'false and outlandish claims,' an 'outrageous and defamatory lie,' a 'defamatory fabrication,' and 'false'; and that 'the alleged rape never happened'"]; *Dickinson II*, at p. 1164 [noting "[n]either statement is phrased cautiously in terms of opinion" and the statements "do not include language such as, 'I think,' or 'I believe'"].)[24]

---

[24] Given our conclusion, we need not address Lakhman's other assignments of error, including her arguments that (1) there was no admissible evidence regarding her purported knowledge of evidence of ICA violations; (2) the trial court erred in overruling her objections to certain other evidence; (3) there was no evidence her comments were false, and (4) the fair reporting privilege or right of fair comment bars Medvei's defamation cause of action.

DISPOSITION

The order denying the anti-SLAPP motion is reversed. The matter is remanded and the trial court is directed to enter a new order granting the motion. Appellant shall recover costs on appeal.

GOODING, J.

WE CONCUR:

SANCHEZ, ACTING P. J.

BANCROFT, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.